UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TERRY D. MATLOCK, ) | |
| ) | |
| Plaintiff, ) | No. 6:22-CV-199-HAI |
| ) | |
| v. ) | |
| ) | ORDER |
| KILOLO KIJAKAZI, *Acting Commissioner* ) | |
| *of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On April 28, 2019, Plaintiff Terry D. Matlock protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. *See* D.E. 9-1 at 15.[1] In both applications, Matlock dates the beginning of his disability period as April 23, 2019. *Id.*

Matlock summarizes his hearing testimony concerning his medical problems. D.E. 15-1 at 9.[2] Matlock claims he suffers from neck pain that radiates down both arms and numbness in his thumb and first finger. *Id.* His application alleges disability due to a torn rotator cuff, pinched nerve in neck, numbness, problems moving right hand, neck problems, and nerve damage. D.E. 9-1 at 297. The Social Security Administration denied Matlock's claims initially on June 5, 2019, and upon reconsideration on September 24, 2019. *Id.* at 15. Then, on August 18, 2021, upon Matlock's request, Administrative Law Judge ("ALJ") Donna Lefebvre conducted an administrative hearing. *Id.* The ALJ heard testimony from Matlock and impartial

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.
[2] References to the record other than the administrative record are to the page numbers generated by ECF.

1

vocational expert ("VE") Stephanie G. Barnes. *Id*. He was found to not be disabled during the relevant period, from April 23, 2019, to August 31, 2021, the date of the decision. *Id.* at 23-24.

Matlock brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying his application for disability insurance benefits. Both parties consented to the referral of this matter to a magistrate judge. D.E. 12. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 14. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 15) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 16).

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[3] The ALJ followed these procedures in this case. *See* D.E. 9-1 at 17-24.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Matlock had not engaged in substantial gainful activity since April 23, 2019, the alleged onset date. D.E. 9-1 at 17.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities,

---

[3] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Matlock experiences the severe impairments of degenerative disc disease of the cervical spine, right rotator cuff tear, bipolar disorder, and an anxiety disorder. D.E. 9-1 at 17. Matlock argues that the ALJ should have identified cervical radiculopathy with disc herniation as a medically determinable impairment. D.E. 15-1 at 1.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Matlock failed to meet this standard. D.E. 9-1 at 18.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found Matlock had the RFC:

> to perform sedentary work as defined by 20 CFR 404.1567(a) and 416.967(a) except he can lift up to ten pounds occasionally and frequently; can stand and walk for up to two hours and sit for up to six hours in an eight-hour workday with normal breaks; can occasionally climb ramps or stairs; never climb ladders or scaffolds; can occasionally stoop, kneel, crouch, or crawl; never balance as defined in the Selected Characteristics of Occupations of the *Dictionary of Occupational Titles*; can perform jobs that do not require exposure to excessive vibration; and can perform jobs that do not require the operation of moving and hazardous machinery or work around unprotected heights. Mentally, the claimant can understand, remember, and carry out simple routine tasks and instructions; can perform jobs requiring no public interaction in his job duties, meaning he could work in a public environment but not be required to interact with members of the public in their specific job duties; and can sustain occasional interaction with coworkers and supervisors.

*Id.* at 20.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his residual functional capacity), he is not

-
-

disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Matlock met this disability standard—he was "unable to perform any past relevant work." D.E. 9-1 at 22.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). If the claimant has solely nonexertional limitations, the Medical-Vocational Guidelines provide a framework for decision-making, and "do not direct conclusions of disabled or not disabled." S.S.R. 85-15, 1985 WL 56857 (Jan. 1, 1985). Further,

> where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational specialist] assistance is advisable for these types of cases.

S.S.R. 83-12, 1983 WL 31253 (Jan. 1, 1983). The ALJ explained that she asked the VE at the hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functioning capacity." D.E. 9-1 at 23. The ALJ accepted the VE's testimony that Matlock could find work as, for example, an addresser and labeler, semi-conductor bonder, and electronic wafer breaker. *Id.* Because sufficient work existed in the national economy that Matlock could perform, the ALJ found him "not disabled" under the relevant framework. *Id.*

Accordingly, on August 31, 2021, the ALJ issued an unfavorable decision, finding that Matlock was not disabled, and was therefore ineligible for disability insurance benefits or supplemental security income. D.E. 9-1 at 24. The Appeals Council declined to review the ALJ's decision on August 31, 2022. *Id.* at 1.

4

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[4] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

---

[4] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

### III. Radiculopathy Diagnosis

First, Matlock argues that the ALJ "erred in failing to recognize [his] cervical radiculopathy with disc herniation is a medically determinable impairment." D.E. 15-1 at 10. The ALJ found that Matlock experiences the severe impairments of degenerative disc disease of the cervical spine, right rotator cuff tear, bipolar disorder, and an anxiety disorder. D.E. 9-1 at 17. "[W]here the ALJ determines that a claimant has a severe impairment at step two of the analysis, 'the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'" *Smith v. Comm'r of Soc. Sec.*, Civil Action No. 2:20-cv-5473, 2021 WL 3883061, at *3 (S.D. Ohio Aug. 31, 2021) (quoting *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003)). Rather, "the pertinent inquiry is whether the ALJ considered 'the limiting effects of all [claimant's] impairment(s), even those that are not severe in determining [the claimant's] residual functioning capacity.'" *Id.* (alterations in original) (quoting 20 C.F.R. § 404.1545(e)).

Although the ALJ did not mention radiculopathy by name, Matlock also failed to identify radiculopathy as an impairment in his application or at the hearing. *See* D.E. 9-1 at 32-60, 297. Although Matlock cites to medical records that include a diagnosis of radiculopathy, "[t]he mere diagnosis . . . , of course, says nothing about the severity of the condition." *Smith*, 2021 WL 3883061, at *4 (alterations in original) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Beyond asserting that the degenerative disc disease diagnosis "is not one that would necessarily be expected to produce the radicular pain and numbness running into the arms, hands, and fingers" (D.E. 15-1 at 12), Matlock "has not identified any evidence that [his] radiculopathy, separate and apart from the other impairments recognized by the ALJ, limits [his] functioning in any way" (*Smith*, 2021 WL 3883061, at *4).

7

Moreover, the ALJ considered Matlock's "neck condition," including his self-report of "extremity numbness and pain at 9/10 in severity." D.E. 9-1 at 20. The ALJ noted Matlock's reports of "dropping stuff and suffer[ing] from lost arm strength," as well as his estimation that he can "sit, stand, and walk for ten to fifteen minutes before needing to change positions to maintain reasonable comfort." *Id.* The ALJ also compared Matlock's claims regarding the intensity and limiting effects of his symptoms to his treatment history, which included his cervical vertebrae:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because they are not fully supported by the medical evidence of record. For example, the claimant's treatment history evidences a largely conservative approach. Initially, the claimant attempted physical therapy (Exhibit 8F) before receiving epidural injections at C6-C7 due to severe pain in his neck and arm as of October 2019 (Exhibit 30F at 1). Additionally, imaging of the cervical region shows disc desiccation at C5-C6, C6-C7 with a moderate bilateral disc osteophyte at C5-C6 causing mild canal stenosis and a left paracentral disc osteophyte complex at C6-C7, which were presumed to be the pathologic basis for the claimant's symptoms (Exhibit 24F at 1). Additionally, radiological reports from Advanced Imaging & Open MRI from March 2019 showed central narrowing of the canal at C7-T1 due to spurring of the endplates with foraminal narrowing at multiple levels (Exhibit 13F at 1).

*Id.* at 21. The ALJ also accounted for this and other impairments through the physical limitations set out in the RFC finding:

> he can lift up to ten pounds occasionally and frequently; can stand and walk for up to two hours and sit for up to six hours in an eight-hour workday with normal breaks; can occasionally climb ramps or stairs; never climb ladders or scaffolds; can occasionally stoop, kneel, crouch, or crawl; never balance as defined in the Selected Characteristics of Occupations of the *Dictionary of Occupational Titles*; can perform jobs that do not require exposure to excessive vibration; and can perform jobs that do not require the operation of moving and hazardous machinery or work around unprotected heights.

*Id.* at 19-20. Matlock has not identified any further limitations that he requires as a result of his radiculopathy. And, "it is Plaintiff's burden at steps one through four of the sequential

8

evaluation process to provide evidence of [his] impairments." *Smith*, 2021 WL 3883061, at *4 (finding "no error by the ALJ in not recognizing Plaintiff's radiculopathy as a medically determinable impairment"). Matlock has failed to identify what additional limitations should have been set forth given his radiculopathy, and the ALJ did consider and account for his reported symptoms and related treatment in the RFC finding. For these reasons, the Court finds no legal error in the ALJ's failure to recognize Matlock's radiculopathy as a medically determinable impairment.

### IV. Medical Opinions

Next, Matlock argues that the ALJ failed to adequately address four medical opinions. First, Matlock asserts that the ALJ made a legal error by failing to adequately address the opinions of Magdy El-Kalliny, M.D., Sarah Godbey, PA, and Annette Simmons, APRN, and their respective lifting limitations. D.E. 15-1 at 13. The ALJ addressed these opinions as follows:

> The State agency assessment of physical functioning as provided by Nicolas Tulou, M.D. per the June 3, 2019 report is not persuasive as to the claimant's longitudinal condition (Exhibit 1A at 6-9; Exhibit 2A at 6-9), nor is the opinion of Robert Culbertson, M.D. per his September 20, 2019 assessment of functioning as relied upon by the State agency a persuasive analysis of the claimant's abilities during the period at issue (Exhibit 7A at 9-11; Exhibit 8A at 9-11). Each consultant determined the claimant could perform medium exertion work based upon the limitations expressed, which is less persuasive than the opinion of Magdy El-Kalliny, M.D. as expressed in the July 27, 2021 opinion that limited the claimant to lifting no more than five to ten pounds (Exhibit 32F) – consistent with a range of sedentary exertion. This is consistent with the opinion of Sarah Todd Godbey, PA-C per her November 11, 2020 report that limited the claimant to lifting, pushing, or pulling five pounds maximally on a permanent basis (Exhibit 21F). For this reason, this opinion is generally persuasive as well. This is further in-line with the May 20, 2020 opinion of Annette Simmons, ARPW-C, which limited the claimant to lifting ten pounds maximally with sitting, standing, and walking limitations of up to fifteen minutes, occasional stooping, crouching, or climbing, never kneeling or crawling, never reaching, and avoidance of all vibration and hazard exposure as well as pulmonary irritants (Exhibit 17F). This opinion is somewhat persuasive as the limitations expressed

9

>are generally in-line with those adopted herein, although rotations between positions at such a frequency are not supported by the evidence of record, and the claimant would be capable of sitting up to six hours a day and standing/walking up to two hours a day.

D.E. 9-1 at 21.

However, even assuming the ALJ's analysis of the medical opinions was in error, it was harmless. During the hearing, Matlock's counsel cross-examined the VE. At that time, Matlock's counsel asked, "Dr. Barnes if we took hypothetical number one, and we altered it to where there was lift or carry five pounds occasionally, lift or carry five pounds frequently, how would that change your answer?" D.E. 9-1 at 59. The VE answered, "For those particular jobs, Mr. Knight, it would not change my answers." *Id.* Meaning, that even if Matlock's ability to lift or carry was restricted to five pounds, this would not change the VE's opinion that he could perform work as an addresser and labeler, semi-conductor bonder or electronic wafer breaker. *Id.* at 57-59.

Matlock acknowledges this, but argues that it cannot overcome the legal error he asserts the ALJ made. D.E. 15-1 at 13-14. His argument is without merit. *See Beagle v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-952, 2020 WL 7249093, at *5 (W.D. Mich. Oct. 9, 2020) (finding harmless error where, "even if the Court assume[d] that Plaintiff's ability to stand or walk is more limited than the ALJ concluded," the VE testified that Plaintiff could still perform a significant number of existing jobs) (citing cases); *Nancy S. v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-00362, 2022 WL 18003293, at *8 (S.D. Ohio Dec. 30, 2022) (finding harmless error where the jobs identified by the VE were not affected by the ALJ's allegedly erroneous RFC finding) (citing cases).

10

Accordingly, even if the Court assumes that the ALJ did not adequately address the medical opinions that Matlock can only lift five pounds, any such error is harmless because the VE testified that such a limitation would not change the jobs that Matlock can perform.

Next, Matlock argues that the ALJ did not adequately address the opinion of Robina Bokhari, M.D., regarding his mental limitations. Specifically, Matlock asserts that the ALJ did not adequately address the supportability and consistency factors when considering Bokhari's opinion. D.E. 15-1 at 14-15. The regulations define "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). The ALJ addressed these factors when considering the opinion of Bokhari:

> Similarly, the opinion of Robina Bokhari, M.D. per the July 7, 2021, mental assessment for that provided for "marked" limitations in the functional domains provided on the form (Exhibit 31F) are not consistent with the claimant's treatment history for his mental impairments, nor are they supported by any narrative explaining the reasonableness of such limitations. Accordingly, it is not persuasive.

D.E. 9-1 at 22. Notably, the ALJ had already addressed Bokhari's treatment records previously in her opinion:

> Mentally, the claimant maintained fair eye contact, okay mood and affect, fair memory and focus, intact insight and judgment, and no suicidal/homicidal ideations per June 2020 mental status examination contained in Mountainview Behavioral and Neuroscience Center records (Exhibit 20F at 1-2). This is generally consistent with other records from [Bokhari] (Exhibit 19F; Exhibit 23F;

11

> Exhibit 29F) The claimant is receiving medication management and most recently had Abilify at 5 milligrams daily added as of June 2021 (Exhibit 29F at 3). Notably, the provider notes of Brandi Mullins, APRN, describe the claimant as alert, normal mood/affect, oriented, normal speech, and normal attention span in May 2021 (Exhibit 28F at 1).

D.E. 9-1 at 21.

The ALJ addressed both the supportability and consistency of Bokhari's opinion. The ALJ noted that the opinion was not supported by any narrative explaining the limitations therein. D.E. 9-1 at 22. Indeed, Bokhari's Medical Source Statement is a one-page checklist with no additional explanations for the restrictions. D.E. 9-1 at 594; *see also Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566-67 (6th Cir. 2016) (ALJs "properly [give] a check-box form little weight where the physician provide[s] no explanation for the restrictions entered on the form and cite[s] no supporting medical evidence."). As to consistency, the ALJ noted that Bokhari's limitations were not consistent with Matlock's treatment history, which included that he had an normal mood and affect, was oriented, had normal speech, and normal attention span. D.E. 9-1 at 21. The ALJ also noted that Matlock was receiving medication management. *Id.* Based on this analysis, the ALJ found Bokhari's opinion to be unpersuasive.

In sum, the ALJ set forth the required "minimum level of articulation" regarding how she considered the consistency and supportability factors in relation to Bokhari's opinion. *Childers v. Kijakazi*, Civil Action No. 5:21-285-JMH, 2022 WL 2706150, at *5 (E.D. Ky. July 12, 2022). Accordingly, the Court finds that the ALJ's findings are not unsupported by substantial evidence or contrary to law.

## VIII. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)      Plaintiff's Motion for Summary Judgment (D.E. 15) is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment (D.E. 16) is **GRANTED**;

(3) **JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 18th day of July, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge